UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-62176-Civ-SCOLA

CHANDRA LEWIS,

    Plaintiff,

vs.

THE KEISER SCHOOL, INC., et al.,

    Defendants.
_____/

## ORDER DENYING MOTION TO COMPEL ARBITRATION

THIS MATTER is before the Court upon the Defendants' Opposed Motion to Compel Arbitration and Stay Proceedings [ECF No. 56], filed by the Keiser School, Inc. ("Keiser") and Everglades College, Inc. ("Everglades"). For the reasons explained below, this motion is denied.

## Introduction

Plaintiff Chandra Lewis was employed as a Community Relations Coordinator at Keiser's Pembroke Pines campus from April 25, 2008 through September 2, 2011. On October 7, 2011, Plaintiff sued Keiser in federal district court seeking unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"). Keiser answered on November 17, 2011, without raising the right to arbitrate. Subsequently, on January 4, 2012, Plaintiff filed an Amended Complaint that added Everglades College as a Defendant. The Defendants answered the Amended Complaint on January 23, 2012, again without raising the issue of arbitration.

Nearly five months later (and seven months after the lawsuit's inception), Defendants moved to compel arbitration. In their motion, the Defendants maintain that Plaintiff signed an arbitration agreement covering all claims arising out of her employment, but that they had been unable to find the agreement (and, therefore, were not "aware" of it) until April 26, 2012. In attempting to explain why they lacked awareness of an agreement they allegedly caused their own employee to sign, Defendants state that they searched their personnel files at the beginning of the lawsuit, but did not find any arbitration agreement at that time. Only months later, in April 2012, was the agreement found in the course of an audit of paper files (prompted by unrelated litigation) at various campuses and the office of the chancellor. According to Defendants, this constitutes a reasonable explanation for their delay in seeking to arbitrate.

Between the initiation of this lawsuit and the Defendants' invocation of the right to arbitrate, the Defendants answered the Complaint and Amended Complaint, responded to Plaintiff's Statement of FLSA Claim, provided mandatory Rule 26 disclosures, propounded discovery requests upon the Plaintiff, responded to Plaintiff's discovery requests, took her deposition, participated in discovery motions practice, obtained additional time to schedule depositions and complete discovery, and obtained an extension of the trial date. *See* Mot. at 8 (describing Defendants' litigation activity during the seven months preceding the request to arbitrate). In addition, when the parties filed their Joint Status Report in January 2012, Defendants indicated that they were actively engaged in discovery, but did not mention any possibility of arbitration. Instead, in response to whether there were "any other issues that the Court should be aware of that may affect the resolution of this matter or the schedule as currently set," the parties (including Defendants) answered with the statement, "[n]one at this time." *See* Jt. Rep. at 3.

Upon discovering the agreement in April 2012, Defendants promptly reached out to Plaintiff to see if she would consent to arbitration. The Plaintiff declined. After becoming "aware" of the agreement to arbitrate, Defendants waited an additional three weeks before moving to compel arbitration, purportedly because "[they] were working with Plaintiff's Counsel to determine Plaintiff's position concerning enforcement of the Parties' Agreement and defending previously scheduled depositions taken by Plaintiff after Defendants had demanded that she arbitrate her claims." Reply at 5. Plaintiff maintains that Defendants acted inconsistently with the right to arbitrate and that she would be prejudiced if forced to arbitrate at this time, "as a result of the expenses and delay incurred during the litigation and discovery periods." Resp. at 11. Thus, she argues, Defendants have waived their right to arbitrate.

## Legal Standards

Federal law governs the enforceability of arbitration agreements. *See Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). Under the Federal Arbitration Act ("FAA"), the federal courts are required to "rigorously enforce" agreements to arbitrate. *See Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008). Of course, where the parties have not agreed to arbitrate a particular dispute, arbitration should not be compelled. *See Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002). But, "when in doubt, questions of arbitrability should be resolved in favor of arbitration." *Beaver v. Inkmart, LLC*, 2012 WL 3834944, at *2 (S.D. Fla. Sept. 4, 2012) (Middlebrooks, J.); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

In addition to deciding whether a valid agreement to arbitrate exists, sometimes courts must also determine whether the right to arbitrate has been waived. *See Ivax Corp.*, 286 F.3d at 1315. "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000). Given the strong policy favoring arbitration, any party arguing waiver bears a heavy burden. *See Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990). "Nevertheless, the doctrine of waiver is not an empty shell. Waiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party." *Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir. 1995). "Waiver of a right to compel arbitration through delay is consistent with 'Congress'[s] clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible[.]'" *See In re Checking Account Overdraft Litig.*, 829 F. Supp. 2d 1316, 1323 (S.D. Fla. 2011) (King, J.) (citation omitted).

## Legal Analysis

The Eleventh Circuit has prescribed a two-part inquiry to determine whether a party has waived its right to arbitrate. *See Ivax Corp.*, 286 F.3d at 1315-16. The Court must first consider whether "under the totality of the circumstances," the party "has acted inconsistently with the arbitration right"; and second, whether by doing so, that party "has in some way prejudiced the other party." *See S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990). Assuming a valid agreement to arbitrate exists between the parties in this case,[1] the Court finds that Defendants waived the right to arbitrate.

As to the first prong, Defendants acted inconsistently with their arbitration right because they waited more than seven months before moving to arbitrate under the very agreement that they purportedly made their own employee sign. They should have known whether or not, for

---

[1] The arbitration agreement that the Defendants "found" was entered into between the Plaintiff, Chandra Lewis (née Mays), and "BAR EDUCATION, INC. d/b/a KEISER CAREER COLLEGE, its parent, subsidiaries, affiliates, successors and assigns[.]" *See* Agreement [ECF No. 56-1] at 1. The parties dispute whether this agreement includes the Defendants in this case, since neither "the Keiser School, Inc." nor "Everglades College, Inc." are expressly identified therein. Plaintiff contends that the Defendants were not parties to the agreement and, therefore, no valid agreement to arbitrate exists between *these* parties. Defendants, on the other hand, maintain that the agreement was clearly entered into between Plaintiff and her employer, Keiser, and that the reference to "BAR EDUCATION, INC." must have been a scrivener's error, which is subject to reformation. Neither party addresses whether the Defendant entities may possibly be among the "subsidiaries, affiliates, successors [or] assigns" of "BAR EDUCATION, INC. d/b/a KEISER CAREER COLLEGE." Rather than decide this issue, the Court will assume, for purposes of this Order, that a valid agreement to arbitrate exists because, in any event, the Defendants have waived any arbitration right they may have had.

certain, this employee had signed an agreement and, if so, where to find it. *See Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1066 (C.D. Cal. 2011) ("Knowledge of a contractual right to arbitrate is imputed to the contract's drafter"); *Ritzel Commc'ns, Inc. v. Mid-Am. Cell. Tel. Co.*, 989 F.2d 966, 969 (8th Cir. 1993) (party that drafted arbitration agreement is charged with knowledge of its existence). In the seven months of litigation preceding the motion to compel arbitration, the record reveals that Defendants never once raised to the Plaintiff or the Court that this dispute might potentially be subject to arbitration. If Defendants were certain that Plaintiff had signed such an agreement, but simply could not immediately find it, Defendants could reasonably be expected to mention the issue at an early point in the case. They did not. Instead, Defendants affirmatively indicated in a joint status report that there were no "other issues that the Court should be aware of that may affect the resolution of this matter or the schedule as currently set" – a strange statement from a party wishing to preserve a potential right to arbitrate. *See Dockeray v. Carnival Corp.*, 724 F. Supp. 2d 1216, 1222 (S.D. Fla. 2010) (Altonaga, J.) ("'not pleading arbitration in the answer can be used as evidence towards finding of waiver.' An early arbitration demand notifies a party that arbitration may be forthcoming, and therefore the party may prepare accordingly. It is for this reason that '[o]nce the defendant, by answer, has given notice of insisting on arbitration[,] the burden is heavy on the party seeking to prove waiver'") (citations omitted).

It is no answer, either, to say that Defendants did not know about the agreement until three weeks before moving to compel arbitration. *See Plows*, 812 F. Supp. 2d at 1066; *Ritzel Commc'ns, Inc.*, 989 F.2d at 969. That they were apparently subjectively unaware of where the arbitration agreement was located, and did not in fact find it until they undertook a paper file audit in connection with an unrelated case some seven months after this case began, does not help their argument. The fact that Defendants' files were disorganized and the form was not where it was supposed to be is no excuse. It does not reflect diligence. *See, e.g.*, *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreat'l Prods., Inc.*, 660 F.3d 988, 995 (7th Cir. 2011) ("While several factors are considered in the waiver analysis, diligence or the lack thereof should weigh heavily in the decision.").

More significantly, for seven months, the record reveals that Defendants actively litigated the case by participating in discovery, successfully obtaining an extension of the discovery period and trial date, and engaging in discovery motions practice. In the joint status report, the Defendants represented to the Court that they were participating in discovery, and did not mention the possibility of arbitration. *See Stanley v. Kahn & Assocs., LLC*, 2009 WL 1532724, at *1 (M.D. Fla. June 2, 2009) (Lazzara, J.) (finding waiver after eight months of litigation,

where defendant "fail[ed] to raise the issue of arbitration at the earliest possible stages of the proceedings," and "announc[ed] its intention to engage in the full panoply of discovery authorized by the Federal Rules of Civil Procedure" in case management report).  This sort of conduct, under the totality of the circumstances, is wholly inconsistent with the right to arbitrate.  *See S & H Contractors*, 906 F.2d at 1514 (party acts inconsistently with its arbitration right by "substantially invok[ing] the litigation machinery prior to demanding arbitration"); *see also Citibank, N.A. v. Stok & Assocs., P.A.*, 387 F. App'x 921, 924 (11th Cir. 2010) ("participating in litigation can satisfy the first prong of the waiver test 'when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate'").

Turning to the second prong of the inquiry, the Plaintiff has been clearly prejudiced here. "When determining whether the other party has been prejudiced, [the court] may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process."  *S & H Contractors*, 906 F.2d at 1514.  While "mere participation in discovery does not cause prejudice sufficient to constitute a waiver where the request for arbitration was timely," a party's "use of pre-trial discovery procedures" may equate to prejudice when the request is other than timely.  *See Stone*, 898 F.2d at 1543.

As explained above, the request to arbitrate was *not* timely in this case.  Defendants delayed more than seven months before invoking their arbitration right, without sufficient excuse.  During the seven month period, Defendants actively litigated this case, causing Plaintiff to incur discovery and other litigation costs.  Defendants nevertheless contend that Plaintiff cannot establish prejudice because the rules of arbitration permit discovery and, therefore, "the same discovery would have been undertaken in any arbitration."  *See* Reply at 8.  Thus, according to Defendants, "[they] have not used the Court's pre-trial procedures to uncover any information that would not have been made available during the arbitration process." *See id.* at 9.  This argument is unpersuasive.

Just because the rules of arbitration permit some discovery to take place, it does not follow that discovery would be as extensive or as costly in an arbitral forum.  In agreeing to arbitrate, the parties "trade[ ] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).  The point is to achieve a quicker and less expensive result through a more streamlined dispute resolution process.  *See, e.g.*, *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (arbitration "provide[s] parties with an alternative method for dispute resolution that is speedier and less costly than litigation") (citation omitted).  To accept Defendants' argument, the Court would have to turn a

blind eye to these realities. The Defendants have not shown that any discovery in arbitration would be commensurate with what has occurred in this judicial forum and, in fact, there is every reason to think otherwise. Indeed, the very nature of arbitration leaves the Court doubting that the costs would be the same, had this case been arbitrated from the beginning. *See, e.g.*, *Suarez-Valdez v. Shearson Lehman/American Exp., Inc.*, 858 F.2d 648, 649-50 (11th Cir. 1988) (Tjoflat, J., concurring) (agreement to arbitrate "indicates the parties' preference for more informal, less expensive procedures," and allowing continued discovery in court "would subject the parties to the very complexities, inconveniences and expenses of litigation that they determined to avoid").

Accordingly, the Court finds that Plaintiff was prejudiced by Defendants' seven month delay because she incurred litigation costs that surely would not have resulted in arbitration. *See Morewitz*, 62 F.3d at 1366 ("Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate."); *S & H Contractors*, 906 F.2d at 1514 (prejudice found, as a matter of law, where party waited eight months, and engaged in substantial discovery and motions practice, before electing to arbitrate); *Stone*, 898 F.2d at 1544 ("Significant prejudice to Plaintiff's legal position may be inferred from the extent of discovery conducted in this case.").

## Conclusion

For the reasons explained above, the Court concludes that the Defendants have waived their right to arbitrate this dispute. Accordingly, it is hereby **ORDERED and ADJUDGED** that the Defendants' Motion to Compel Arbitration [ECF No. 56] is **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida on September 18, 2012.

ROBERT N. SCOLA, JR.
**UNITED STATES DISTRICT JUDGE**

*Copies to:*
U.S. Magistrate Judge
Counsel of record